please the court Stephen Hoffman on behalf of the appellant Tyrone Wade. Mr. Wade is of course in custody and has been for 43 months. As the court's aware, our contention is the evidence was insufficient to support each of the two counts in which he was convicted, the conspiracy to distribute marijuana and possession with intent to distribute substantive count marijuana. I think the case presents issues of knowledge, intent, and actions, and that the facts are somewhat analogous to a number of passenger doctor and type cases. There's no doubt the offenses occurred, but there is inadequate evidence to show Wade knowingly participated, and I emphasize the word participation because I think this is a situation where we really need to look at his actions. It's much easier to describe what he didn't do than what he did, and not to repeat what's in the pleadings, but he never drove the load boat, never rode in the load boat, was never in the load boat. He was arrested standing near it, but there's no evidence he ever looked inside or even knew what was inside. And similarly... Well he did drive the, I mean he did help the truck. He did open the gate. Yeah I'd like to address that. I think it was, I'm not sure... So he didn't just completely do nothing. Right. I'm not sure if he opened or closed the gate, but he did something with the gate. He did something to facilitate it. But unlike a lot of cases, he was not in what I will call the load vehicle, and he's even more remote. Because he never drove the truck that towed the load vehicle. He never drove that truck when it towed the boat, nor did he drive that truck when it had an empty trailer, which the boat eventually would have been placed on. He wasn't local to San Diego. Where did he come from? Los Angeles. Traveled down from Los Angeles. The government, while we're talking about what he did and didn't do, alludes to the contention that he backed up the truck in the storage lot. But I re-reviewed the transcript and the agent seems to confirm at page 56 that the truck never moved, according to the video, while Wade was in the driver's seat. He didn't work on the truck. Some of the other defendants did all of these things. That's why I emphasize these different roles. Worked on the truck or prepared the GPS device. So your position is that he was just hanging out? No, my position is there wasn't enough evidence under this court's standards to prove him guilty beyond a reasonable doubt. What he was doing and why he was there is a matter of speculation, but it's not proof beyond a reasonable doubt. Well, he pretty much admitted it in his telephone conversations with his girlfriend. It's a little bit ambiguous, but I think what he admitted... He admitted that stuff happens. Stuff happens and that stuff, what he talked about, was the most incriminating evidence and I think the district judge, who was a trier of fact in this case, recognized that and expressed words to the effect that this would clearly be insufficient but for those taped conversations from the jail. And when we're looking at this, we have to interpret it in the most favorable fashion to the government. That's correct. But the district judge, having rejected the testimony of the cooperating co-defendant and found that that was not believable and that there was no proof beyond a reasonable doubt that Wade had participated on events a couple of weeks earlier, the district judge, I think, relied largely on the tape-recorded statements that Wade foolishly made from the jail. But what does that leave us with? I'd submit that it at best shows he had arguable knowledge about what was going on. I don't think knowledge alone is enough. We've got to look also at what he did. What are his actions? What is his actual participation? I can't help but look at this case and compare it to some of those passenger doctrine cases where we have a defendant in a speeding passenger, in a speeding load car, with a prior conviction, acting nervous, a prior conviction for similar conduct, acting nervous at the time of the arrest, in a vehicle that reeks of marijuana, and the court says that is not enough, like in the Sanchez-Mata case, for example. But I agree with the assessment that those statements that he made from the jail are the most damaging, but I don't think they go beyond arguably establishing knowledge. Knowledge was not enough in those other cases, like Sanchez-Mata, and, frankly, I don't think it's enough here with the void or lack of other action on his part. This whole... Refresh us with what the exact language was on that tape. It's very colorful language, and I'd have to look up the exact language, but the most incriminating language, I think, is when he's speaking with a female and he says words to the effect, and the exact language is in the brief, but words to the effect, you know, I did that stuff, you know, that stuff that we talked about previously, I shouldn't have done it, something to that effect. Well, the female says, I told you not to do that stuff, and he says, remember what I told you, we was on the bed, yeah, the same stuff, I told you not to do that stuff, I had a bad feeling about it. You know, when you take that, you combine that with the fact that he came to San Diego with the conspirators, spent two nights in hotels with at least some of the conspirators, paid for by someone other than himself, helped unload the boat, was there when the boat came back, and was very comfortable with the conspirators in the vicinity of the drugs. Sometimes they were very comfortable to have him standing around the boat. He had all that conduct to the statements post-arrest, and it's hard to imagine that he didn't, wasn't involved. With all due respect, I don't think he helped unload the boat, but he was there when it was. All of those activities that your Honor describes is him being present with these other people. It doesn't show that he did anything. Everybody else had a role in the case, whether it's to drive the truck, towing the boat, to drive the boat, to be on the boat, to prepare the vehicles, prepare the GPS. Everyone else did something affirmative, but wait, and frankly, the fact that he came from Los Angeles, I'm not sure that that adds anything. I think all the defendants came from Los Angeles. He just came from some other location to this location, spent a couple nights there for some purpose. I agree. He came, spent two nights with the co-conspirators, he was associating with them, and he was there for some purpose. But I don't think the evidence went far enough to show his actions meet the proof beyond a reasonable doubt standard. Thank you. Thank you, Mr. Hoffman. Mr. Cole. Good morning. May it please the Court. William Cole for the United States. Your Honor, the government would submit that this is not like the typical passenger case because in those cases, this Court has often said that even though someone knows there's drugs in the car, if there is literally no evidence of them doing anything but participating, excuse me, but riding as a passenger, then that's not enough. This case was a large-scale conspiracy with different players with different roles. And Mr. Wade's role actually is quite clear, the government would submit. He and Mr. Bailey had the responsibility of driving the boat to the launch point, driving the truck and trailer back to the lot, and then bringing it back again the next day to pick up the boat. It's very helpful to have two people when you're moving a truck and trailer. That's indicated by the facts in the record that on page 51 of the supplemental excerpts, it shows that the agent does see Wade backing the truck up to the trailer and boat. He says it looks like he's backing up to a hedge. And that is corroborated by Bailey who testified, and that's on page 124, that Wade jerked the truck back and forth to get the trailer to hitch to the truck. Then he is seen on pages 51 and 57 sticking his head out the passenger side to watch as the trailer and boat is pulled through the gate. Now, these things in and of themselves, this would apply to any cruise on a boat. Someone needs to watch and make sure the boat's not getting hit. But it's a role you also need if you're launching a boat to go get drugs. And when you place that kind of participation with knowledge, as the district court found, you have enough. Of course, as this court knows, this court's often said that once a conspiracy is proven, and the defense here doesn't deny there's a conspiracy, the connection only has to be slight. And so to say, well, he just poked his head out the window to make sure they don't hit the side of the gate, or he just opened the gate, or he just hitched the boat to the trailer, those justs are plenty under the case law once you have knowledge of the conspiracy. And the government would submit that the tapes, yes, possibly you could have a different inference drawn from those, but this prior fact certainly drew a reasonable one. And you could have perhaps different inference from his post-arrest statement that he was just there because they wanted someone they could trust. But certainly it's reasonable to draw the conclusion, the inference that the district court judge did, that that makes no sense. Trust has nothing to do with a typical pleasure trip. And the government would submit for all these reasons. There was, in fact, knowledge. There was, in fact, participation. Regardless of whether that participation might be viewed by the defense as slight, that's enough under the law. And unless there's any questions, the government would submit. I don't think so. Thank you, Mr. Hoffman. I would be prepared to submit unless the panel has additional questions. I don't think so. Thank you. Thank you, counsel, for your argument. The matter just argued will be submitted.
judges: Fletcher, Rymer, Beistline